**GARDNER AND NORTH ROOFING AND SIDING CORPORATION, a corporation, et al., Appellants,**

v.

**BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM et al.**

**No. 71–1089.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 12, 1972.

Decided July 14, 1972.

Mr. Joseph J. Lyman, Washington, D. C., for appellants.

Mr. Thomas J. Press, Atty., Dept. of Justice, with whom Mr. L. Patrick Gray, III, Deputy Atty. Gen. at the time the brief was filed, Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, and Alan S. Rosenthal, Atty., Dept. of Justice, were on the brief, for appellees. Messrs. Harold D.

Rhynedance, Jr., Asst. Gen. Counsel, and Gerald Harwood, Atty., F. T. C., also entered appearances for appellee Federal Trade Comm.

Before LEVENTHAL and ROBB, Circuit Judges, and FRANK A. KAUFMAN,* U. S. District Judge for the District of Maryland.

ROBB, Circuit Judge:

In an action for declaratory judgment the appellants challenged as invalid a regulation promulgated by the Federal Reserve Board under the Truth in Lending Act, Title I of the Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq. On cross motions for summary judgment the district court upheld the validity of the regulation and dismissed the action. We affirm.

The appellant Gardner and North Roofing and Siding Corporation, a New York corporation, is engaged in the business of renovating, remodeling, reconstructing and repairing dwelling houses in and around Syracuse, New York. The appellant Surfa-Shield Corporation, a Virginia corporation, engages in a similar business in the area of Fairfax, Virginia.

In the course of the appellants' businesses their salesmen solicit homeowners to contract for the repair, renovation or modernization of their houses. Credit is extended to customers pursuant to a "deferred payment plan" under which the customer executes a promissory note, without collateral, for the amount to be charged for labor and materials. Although no mortgage is executed, the laws of New York[1] and Virginia,[2] and of many other states, give home improvement contractors a lien on the customer's home—a contractor's or mechanic's lien—at the time the work is performed.

---

* Sitting by designation pursuant to 28 U.S. C. § 292(c) (1970).

1. N.Y. Lien Law § 3 (McKinney's Consol. Laws, c. 33 1966).

2. Va.Code Ann. § 43-3 (1950).

Section 125(a) of the Consumer Credit Protection Act, 15 U.S.C. § 1635(a), provides:

(a) Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest is retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later by notifying the creditor, in accordance with regulations of the Board of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section.

Section 105 of the Act, 15 U.S.C. § 1604, directs the Federal Reserve Board to "prescribe regulations to carry out the purposes of this subchapter", and provides that:

These regulations may contain such classifications, differentiations, or other provisions, and may provide for such adjustments and exceptions for any class of transactions, as in the judgment of the Board are necessary or proper to effectuate the purposes of this subchapter, to prevent circumvention or evasion thereof, or to facilitate compliance therewith.

Pursuant to this authority the Board promulgated the challenged regulation. 12 C.F.R. § 226.9(a). The regulation provides that within three days of the consummation of "any credit transaction in which a security interest is *or will be* retained or acquired" in customers' residences, the customer shall have the right to rescind the transaction.[3] (Emphasis supplied.) In addition, the Board by regulation 12 C.F.R. § 226.2(z) defined the term "security interest" to include liens created by operation of law, such as mechanic's, materialmen's, artisan's and other similar liens.[4] The effect of these regulations is that the appellants are required to notify a customer of his right to rescind when there is a probability that a lien on his house will arise by operation of law even though he has

3. 12 C.F.R. § 226.9(a) provides in pertinent part:

(a) *General rule.* Except as otherwise provided in this section, in the case of any credit transaction in which a security interest is or will be retained or acquired in any real property which is used or is expected to be used as the principal residence of the customer, the customer shall have the right to rescind that transaction until midnight of the third business day, following the date of consummation of that transaction or the date of delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor by mail, telegram, or other writing of his intention to do so. Notification by mail shall be considered given at the time mailed; notification by telegram shall be considered given at the time filed for transmission; and notification by other writing shall be considered given at the time delivered to the creditor's designated place of business. (Footnote omitted.)

4. 12 C.F.R. § 226.2(z) provides in pertinent part:

(z) "Security interest" and "security" mean any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interests under the Uniform Commercial Code, real property mortgages, deeds of trust, and other consensual or confessed liens whether or not recorded, mechanic's, materialmen's, artisan's, and other similar liens, vendor's liens in both real and personal property, the interest of a seller in a contract for the sale of real property, any lien on property arising by operation of law, and any interest in a lease when used to secure payment or performance of an obligation.

not executed an indenture on the property.

The appellants contend, as they did in the district court, that section 125(a) of the Act limits an obligor's right of rescission to transactions in which the obligor executes a mortgage or other similar indenture in favor of the creditor or lender. Conceding that the term "security interest" as used in section 125(a) is not defined and is therefore ambiguous, the appellants argue that Congress did not intend the term to include liens created by operation of law as distinguished from consensual security interests. Noting that section 125(a) speaks only of a security interest which "is retained or acquired" they assert that this language does not encompass a lien that may arise in favor of a third party not privy to the original contract. Finally, the appellants point to section 125(b), 15 U.S.C. § 1635(b), which provides that upon rescission "any security interest given by the obligor becomes void . . . ." The appellants argue that since an obligor cannot give mechanic's or materialmen's liens the statute must refer only to mortgages or other consensual liens. From all these considerations the appellants conclude that the Board's regulations relating to a security interest that "is or will be retained or acquired" are beyond its power and invalid. We are unable to agree.

█ In general the purpose of the Consumer Credit Protection Act was "to assure a meaningful disclosure of credit terms" to consumers. 15 U.S.C. § 1601. The specific purpose of section 125(a), 15 U.S.C. § 1635(a), was to protect homeowners from the unscrupulous business tactics of certain home improvement contractors. The need for such protection was emphasized in testimony before congressional committees concerning "second mortgage" racketeers who encumbered their customers' houses to secure payment for unneeded or shoddy work. There was also reference to the liens of artisans, materialmen and others arising by operation of law which could subject a consumer's property to loss by foreclosure. Witnesses told of cases in which consumers paid double for work because artisans, unpaid by an unscrupulous contractor, filed mechanic's liens.[5] All this is conceded by the appellants in their brief (App.Brief p. 18). The appellants also concede that "[i]n either instance, whether the cloud on the homeowner's title was induced by a second mortgage, or by other consensual liens of his own making, or, from liens arising by operation of law, the possibility of loss by foreclosure was evident." As we have said, however, the appellants contend that the "plain language of Section 125(a), as enacted, made rescindable only those contracts [involving] a security interest through a second mortgage or other consensual type lien."

█ We think the appellant's construction of the statute is too narrow and technical. Being remedial legislation to protect the homeowner, the Act must be broadly construed to effectuate its purpose. Peyton v. Rowe, 391 U.S. 54, 65, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). So construed, the statute supports the challenged regulation.

█ A contract to renovate, remodel or repair a house imports that work will be done by mechanics and artisans and that materials will be furnished in connection with that work. Implicit in the contract, therefore, is a provision that a lien will attach to secure payment for the work and materials. In other words, the statutory provision for me-

---

5. Hearings on S.J.Res. 130, S. 3065, and S. 3066 Before the Senate Commerce Committee, 90th Cong., 2d Sess., ser. 90–64, at 10, 42–43, 75, 241–42 (1968), in Unfair Practices in the Home Improvement Industry and Amendments to the FTC Act (1968). See H.R.Rep.No.1397 (Conference Report), 90th Cong., 2d Sess. (1968). Regarding rescission of certain contracts, see id. at 26.

chanic's and materialmen's liens must be taken as a part of the contract. This conclusion is fortified by the settled rule that "the laws which subsist at the time and place of the making of a contract * * * enter into and form a part of it, as if they were expressly referred to or incorporated in its terms." Von Hoffman v. City of Quincy, 71 U.S. (4 Wall.) 535, 550, 18 L.Ed. 403 (1866).

██ We think it a reasonable construction of the statute that Congress intended to require disclosure of all the consequences flowing from the signing of a home improvement contract, including not only the consequences spelled out in the contract, but also those necessarily inherent therein. Any other construction would expose the homeowner to hidden and perhaps fatal traps; it would lead to precisely the kind of imposition that Congress intended to prevent. Viewed in this light we think the challenged regulation is entirely consistent with the legislative purpose and is a reasonable and proper device for carrying it out.

██ We have carefully considered the appellants' argument that the legislative history of section 125(a) of the Act indicates that Congress intended to limit its scope to mortgages and other consensual liens. Although it is true that much of the discussion in committee and on the floor focused on credit transactions involving second mortgages, we find nothing to indicate that Congress intended to exempt other liens from the salutary effect of the legislation. The appellants' reliance upon a letter from one congressman is misplaced. The letter, written a year after the legislation was passed, is not a part of the legislative history and cannot be considered on the question of congressional intent. *See* National School of Aeronautics, Inc. v. United States, 142 F.Supp. 933, 938, 135 Ct.Cl. 343 (1956).

The Board's construction of the statute is entitled to deference, and we find nothing unreasonable in its use of its authority, under section 105 of the Act, to issue the regulation. Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed. 2d 616 (1965).

The judgment is affirmed.