**DEPARTMENT OF ENERGY, by change of name from Energy Research and Development Administration, Appellant,**

v.

**Roger D. WESTLAND, Appellee.**

**Appeal No. 77–520.**

United States Court of Customs and Patent Appeals.

Nov. 23, 1977.

Randall G. Erdley, U. S. Energy Research and Development Administration, Washington, D. C., attorney of record, for appellant.

Stephen Raines, Detroit, Mich., attorney of record, for appellee. David B. Ehrlinger, Detroit, Mich., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and FORD, Judge.

FORD, Judge.*

This is an appeal from the final order of the Patent and Trademark Office (PTO) Board of Patent Interferences (board) in a proceeding to determine the right of the Energy Research and Development Administration (ERDA)[1] to have a patent issued to it instead of the inventor or his assignee, under section 152 of the Atomic Energy Act of 1954 (Act), as amended (42 U.S.C. 2182).[2] The board held that ERDA was not entitled to direct the Commissioner of Patents and Trademarks to issue a patent to it, based upon this court's holding in *Piper v. Atomic Energy Commission*, 502 F.2d 1393, 183 USPQ 235 (Cust. & Pat.App.1974) [hereinafter cited as *Piper*]. We affirm.

* The Honorable Morgan Ford of the United States Customs Court sitting by designation pursuant to 28 U.S.C. § 293(d).

1. The Atomic Energy Commission (AEC) filed the original proceeding before the PTO, but its name was changed during the proceeding before the board to the Energy Research and Development Administration. During this appeal, the name was again changed to the Department of Energy. Nonetheless, for the purposes of this appeal these parties are considered to be the same and in privity. For consistency, ERDA will be used to designate appellant.

2. Section 152 provides, in part, as follows:

Any invention or discovery, useful in the production or utilization of special nuclear material or atomic energy, made or conceived in the course of or under any contract, subcontract, or arrangement entered into with or for the benefit of the Commission, regardless of whether the contract, subcontract, or arrangement involved the expenditure of funds by the Commission, shall be vested in, and be the property of, the Com-

*The Invention*

The patent is to be issued upon the application of Westland, serial No. 185,437, filed September 30, 1971, entitled "New Pyridine Compounds and Methods for Their Production." The application claims certain thiazolidinyl alkoxy pyridine compounds stated to be useful as antiradiation agents, the disclosed utility being as follows:

The compounds of the invention are new chemical compounds that are useful as pharmacological agents, especially as antiradiation agents that are active in protecting against the effects of exposure to X-ray or gamma ray radiation. Their activity in this regard can be demonstrated and quantitatively measured in a standard test in experimental animals (mice) that is carried out essentially as described in a number of published reports; see, for example, R. D. Westland, *et al., J. Med. Chem., 11*, 1190 (1968).

The invention was developed in the course of a contract between appellant's employer and assignee, Parke, Davis & Company, and the United States Army Medical Research and Development Command. The contract contains a patent rights clause, which states that the contrac-

mission, except that the Commission may waive its claim to any such invention or discovery under such circumstances as the Commission may deem appropriate, consistent with the policy of this section. No patent for any invention or discovery, useful in the production or utilization of special nuclear material or atomic energy, shall be issued unless the applicant files with the application . . . a statement under oath setting forth the full facts surrounding the making or conception of the invention or discovery described in the application . . . . The Commissioner of Patents shall as soon as the application is otherwise in condition for allowance forward copies of the application and the statement to the Commission.

The Commissioner of Patents may proceed with the application and issue the patent to the applicant (if the invention or discovery is otherwise patentable) unless the Commission, within 90 days after receipt of copies of the application and statement, directs the Commissioner of Patents to issue the patent to the Commission . . . .

tor agrees that ERDA shall have the sole and conclusive power to determine the disposition of the title to and the rights under any patent application or patent that may issue on any subject invention made by employees of the contractor which *relates to the production or utilization of special nuclear material or atomic energy within the purview of the Act.* Thus, the issue for resolution on this appeal is whether these antiradiation compounds are "useful in the production or utilization of special nuclear material or atomic energy" under section 152.

### The Board Decision

The board reviewed the facts of this proceeding and those of *Piper* and found "no significant difference" between them. Further, the board did not find convincing ERDA's argument that the proceeding was distinguishable from *Piper* in that the latter was decided on a motion for summary judgment whereas this proceeding contained the testimony of various persons providing "expert opinion evidence." Finding the facts and issues to be parallel with *Piper,* the board followed the holding in that case under the doctrine of stare decisis. Accordingly, the board held that ERDA was not entitled to the direction under section 152.

### OPINION

Both parties acknowledge there is a similarity of facts between *Piper* and the instant appeal. The threshold issue in this appeal is whether the facts are so similar as to require following our precedent in *Piper.* In *Piper,* this court held that certain chemical compounds useful as antiradiation agents were "not 'useful in the production or utilization of special nuclear material or atomic energy,' within the meaning of sec-

tion 152 of the Atomic Energy Act of 1954." *Piper, supra* at 1398, 183 USPQ at 238–39. Thus, unless there are factual differences between this appeal and *Piper,* or unless this court concludes it erred in *Piper,* we will follow our prior decision. Each of the parties' contentions regarding the factual and legal similarities and differences between the two cases is discussed below.

### I. Piper Was Decided on Motion for Summary Judgment

■ Appellant contends since *Piper* was decided on a Motion for Summary Judgment, the record before this court contained no evidence on the contract, the subject matter and scientific terms involved, or the legislative intent of section 152. However, the AEC in *Piper* waived its opportunity for a plenary proceeding and agreed that "it was not necessary for the AEC to introduce any evidence whatsoever to show that the subject contract was for its benefit because all necessary pertinent evidence was already of record and *admitted* by both sides." Brief for Appellee at 25, *Piper, supra.* See also *Piper, supra* at 1395, 183 USPQ at 237, where this court indicated that the sole unresolved issue involved the "single question of statutory construction." Since AEC argued that there was "no issue as to any fact" and, in fact, filed its own motion for summary judgment, it cannot now argue that *Piper* was decided upon an inadequate record and that it did not have a chance to introduce evidence on the merits of the issue.

### II. Factual Similarities Between Piper and This Appeal

The board incorporated a comparison of these cases which was prepared by appellee Westland.[3] The important similar factors

---

**3.** Appellee's comparison is as follows:

| | The Present Case | The Piper Case |
|---|---|---|
| Claimed Invention | Novel Chemical Compounds | Novel Chemical Compounds |
| Described Usefulness | Antiradiation Agents | Antiradiation Agents/exposure to lethal radiation, X-rays or gamma rays. |
| | * p. 6, first full paragraph | |

* "The compounds of the invention are new chemical compounds that are useful as pharmacological agents, especially as antiradiation agents that are active in protecting against the effects of exposure to X-ray or gamma ray radiation. Their activity in this regard can be demonstrated and quantitatively measured in a standard test in experimental animals (mice) that is carried out essentially as described in a number of published reports; see, for example, R. D. Westland et al., *J.Med.Chem., 11,* 1190 (1968)."

involved in both cases are the same type of claimed invention, the same described usefulness, similar methods of administration, the same procedure for evaluation as radiation protective agents, and the same research sponsor.

ERDA contends that the instant application expressly states that the antiradiation drugs are useful in protecting against gamma radiation whereas the Piper application did not "precisely" so state. ERDA argues that if this court had been aware that the Piper application was useful in connection with gamma radiation, it would have reached a different conclusion. This distinction is without merit. The relevant portion of the Piper application indicates that the chemicals involved there would provide protection against X-ray and other harmful radiation:

> Thus, for example, in X-ray therapy it is desirable to provide a drug which can be administered to a subject and which will then provide protection against the harmful effects of X-ray radiation. Antiradiation agents may also be useful in providing protection against other sources of harmful radiation such as may be encountered by personnel in the fringe areas of a nuclear explosion or by space travelers.

|  | The Present Case | The Piper Case |
| --- | --- | --- |
| Route of administration | orally or parenterally | intraperitoneally |
| Disclosed Procedure for Evaluation as radioprotective agents | Exposure of intraperitoneally dosed mice to lethal radiation of X-rays (825 roentgens) of gamma rays (950 to 1050 roentgens) and measurement of 30-day survival percentage versus undosed control animals. | |
| Sponsor of research leading to Invention | Under Government Contract: U.S. Army Medical Research and Development Command. | |

4. The AEC stated in its brief before this court in *Piper*:

> In Summary, appellee submits that the antiradiation drugs of this application are "useful in the production or utilization of special nuclear material or atomic energy" because the patent application states: (1) that the antiradiation agents covered by the application will provide protection against the harmful effects of radiation; (2) these antiradiation agents may be useful in providing protection against harmful radiation such as

*Piper, supra* at 1394, 183 USPQ at 236. Moreover, the screening procedure used in Piper's application, evaluated effectiveness by exposure to both X-rays or gamma rays. See *id.* Furthermore, the AEC in *Piper* acknowledged that those chemicals were tested by exposure to gamma radiation.[4] Since it is clear that the Piper application encompassed a use with gamma radiation and the opinion in *Piper* specifically recognized this fact, there is no basis for appellant's contention that this court was misled by the statement of utility in *Piper*.

Since the facts are virtually identical, this appeal, as was *Piper*, is dependent upon the interpretation of the language of the appropriate statute.[5]

### III. The Doctrine of Stare Decisis and the Piper Decision

■■■ The doctrine of stare decisis basically stated is that where "a court has in one case decided a question of law it will in subsequent cases in which the same question of law arises ordinarily decide it in the same way. The doctrine . . . is applicable although the parties in the later action are different from those in the prior actions." Restatement of Judgments § 70,

> may be encountered by personnel in the fringe areas of a nuclear explosion or by space travelers; (3) compounds of the invention as claimed were tested at Walter Reed Army Institute of Research (a Government facility) in mice exposed to lethal doses of *gamma radiation*. Since harmful radiation from a nuclear explosion is by definition atomic energy and gamma radiation is atomic energy, it was clearly within Congressional intent to include inventions and discoveries of the type claimed in this application within the purview of Sec. 2182 of the Atomic Energy Act.

Brief for Appellee at 23, *Piper, supra*.

5. We also note that the parties, during the proceeding below, recognized the similarity of the facts and issues presented in the two cases. On January 22, 1974, the parties filed a stipulation for an extension of time. The reason for the request was that since the *Piper* case (then on appeal to this court) "presents essentially the same facts and issues as the instant case the Court's [CCPA] decision may be dispositive of the issue raised" in the present proceeding.

Comment a (1942). A court may overrule a prior decision, in the interest of uniformity, stability, and certainty in the law. The relevant rule of law which it has established will customarily be followed by the court unless it is clearly convinced that the legal rule was originally erroneous or is no longer sound because of changed conditions and that more good than harm would come by departing from the precedent. 1B Moore's Federal Practice ¶ 0.404[1] at 401 (1976).

▪ The position of this court on the role of stare decisis is clear and consistent with that of the other appellate courts. A readjudication of issues previously determined demands a clear and convincing showing of error; this requirement is not satisfied by reargument of former issues. *John C. Rodgers & Co. v. United States*, 524 F.2d 1220 (1975), 63 CCPA 10, C.A.D. 1158; *United Merchants, Inc. v. United States*, 468 F.2d 208, 60 CCPA 11, C.A.D. 1073 (1972); *R. J. Saunders & Co., Inc. v. United States*, 54 CCPA 29, C.A.D. 898 (1966); *United States v. Dodge & Olcott, Inc.*, 47 CCPA 100, C.A.D. 737 (1960). As this court said in *Dodge & Olcott, supra* at 103:

> It is unfair both to the courts and to the parties litigant that there be a re-adjudication of issues previously determined except upon a clear and convincing showing of error. . . . We are unwilling to find error in a prior decision where, as here, the only reason advanced is that the party asserting the error does not agree with our prior decision.[6]

In this appeal, appellant argues that this court was wrong (1) in concluding section 152 was an effort to liberalize the patent provisions of the Act; (2) in construing the terms of section 152 in light of other sections of the Act, *e. g.*, sections 153 and 158 and section 11(c) of the 1946 Act; (3) in

---

6. Furthermore, a court should not reinterpret or redetermine the validity of a statute, regulation, or ruling every time it is confronted with a different case involving the same statute, regulation, or ruling. "Such a procedure could destroy any semblance of uniformity in the application of the law in question." *Kehaya v. United States*, 355 F.2d 639, 641, 174 Ct.Cl. 74, 78 (1966).

---

requiring an essential or fundamental relationship between the invention and the utilization in atomic energy. These are the very same arguments this court previously considered and rejected in the AEC's Petition for Rehearing[7] in *Piper*.[8] The opinion of *Piper* cogently and in detail examined the statute, and appellant is here merely in disagreement with that case's rule of law.

Appellant has submitted in this appeal the testimony of various persons to provide "expert opinion" testimony. This evidence is intended to establish (1) that the antiradiation drugs of this application are related to and/or are useful in the production or utilization of special nuclear material or atomic energy within the purview of the Act, (2) that the intent of the contract was to include these materials, and (3) that the intent of the Act was to include compounds such as these in issue. We find nothing in this evidence of which this court was not cognizant in *Piper*.

▪ ERDA introduced the testimony of former Congressman Holifield (a draftsman of the legislation) to demonstrate that this court's decision misinterpreted the statute; however, courts have observed that no member of the legislature is empowered to speak with authority for that body. *Selman v. United States*, 498 F.2d 1354, 1358–59, 204 Ct.Cl. 675 (1974); *Gardner & North Roofing & Siding Corp. v. Board of Governors of Federal Reserve System*, 150 U.S. App.D.C. 329, 464 F.2d 838, 842 (1972); *National School of Aeronautics, Inc. v. United States*, 142 F.Supp. 933, 938, 135 Ct.Cl. 343 (1956); see *United States v. United Mine Workers of America*, 330 U.S. 258, 281–82, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Such a policy would appear to be the only sound approach to statutory analysis.

---

7. Appellee's Petition for Rehearing at 3–5, *Piper, supra*.

8. The petition was denied on November 21, 1974. AEC elected not to file a petition for certiorari with the Supreme Court.

At first blush it might seem that this would be the ideal way to learn the intent of a legislative body, to get it straight from the mouth of a responsible member of the legislature. Second thought leads to the conclusion that the practice would be intolerable. A legislature speaks through statutes, and, in cases where the statutes require interpretation, through committee reports and debates. No member of a legislature, outside the legislature, is empowered to speak with authority for the body. If he may testify voluntarily, other members of his legislative body with different views or different recollections may be summoned to give their differing versions. *National School of Aeronautics, Inc. v. United States, supra* at 938, 135 Ct.Cl. at 351. In view of the foregoing, the testimony of Congressman Holifield is of little value in the interpretation of the statute. There appears to be no additional evidence demonstrating that this court was in error on any factual or legal issue in *Piper* (clearly and convincingly in error, or otherwise).

---

**9.** In view of our decision, we need not reach appellee's argument that ERDA should be collaterally estopped to relitigate the issues already decided in *Piper* in which ERDA was a party litigant.

## CONCLUSION

 It is clear from the record that ERDA had an opportunity during *Piper* to present all of the arguments respecting the issues here presented. The readjudication of issues tends to create nonuniformity of the law, and affect stability and certainty in the application of the law in question. There has been no clear and convincing showing of error. We accordingly are constrained to follow our previous holding in *Piper*.

Therefore, the decision of the board is *affirmed.*[9]

*AFFIRMED.*

RICH, Judge, concurs in the result.