COLLINWOOD SHALE, BRICK AND SUPPLY COMPANY *v.*
BINDER ET AL., APPELLANTS

[Cite as Collinwood Shale, Brick and Supply Co.
v. Binder (1978), 60 Ohio App. 2d 91.]

(No. 37713—Decided October 19, 1978.)

*Mr. Alan I. Goodman,* for appellants.
*Messrs. Parks, Eisele, Bates & Wilsman* and *Mr. David G. Umbaugh,* for appellee Second Federal Savings and Loan Association.

JACKSON, J. This is an appeal from a judgment entry of Cleveland Municipal Court dismissing the claim of appellants, Harold Binder and Mary Binder, for indemnification from the appellee Second Federal Savings and Loan Association (now Cardinal Federal Savings and Loan Association, hereinafter Cardinal) for payments to certain lienholders. The following relevant facts are not disputed by the parties.

T.F.F. Construction Company (hereinafter T.F.F.) and Mr. and Mrs. Binder entered into a contract on June 3, 1971,

for the construction of a garage. As part of that contract, T.F.F. gave the Binders notice of a right to rescind the contract until June 7, 1971, which notice is required by Section 1635 (A) of the Truth-in-Lending Act, Title 15, U. S. Code, effective May 29, 1968, and amended October 28, 1974.

On July 7, 1971, in satisfaction of their contractual obligation, the Binders executed a promissory note payable to T.F.F. in the sum of $6,091.21. The note was secured by a second mortgage on the Binder residence. This note was subsequently negotiated and assigned to Cardinal. Cardinal recorded the mortgage on July 28, 1971.

T.F.F. built the garage and the Binders signed a completion certificate on July 7, 1971. However, T.F.F. failed to pay certain materialmen and subcontractors who accordingly filed and perfected mechanics' liens against the home of the Binders in the amount of $1,562.90.

An action was commenced by Collinwood Shale, Brick & Supply Company in Cleveland Municipal Court to foreclose on a mechanic's lien obtained on the Binder residence. The appellants Binders in turn filed a cross-complaint against Cardinal. The Binders subsequently settled the liens held against their residence by Collinwood Shale and other subcontractors of T.F.F. Construction Company in the amount of $1,562.90, but left pending their claim against Cardinal for indemnification.

The trial court, followed submission of stipulations of fact and briefs, entered judgment for Cardinal on February 11, 1977.

Appellant has filed a timely appeal from this judgment and assigns two errors for review:

"The court erred in granting judgment for the third party defendant.

"A. A creditor has a duty to disclose the possibility of mechanics liens and his failure to make such disclosure gives rise to the right to rescind.

"B. A lending institution may be liable to a consumer under TIL where they purchase the paper of a non-complying creditor."

The appellant Binders argue that because T.F.F.'s failure to disclose the possibility of present or future liens affecting their residence in accordance with the federal Truth-in-

Lending Act (hereinafter the Act), Section 1601 et seq., Title 15, U. S. Code, Cardinal, as assignee of the note and mortgage, is liable for payments made by the Binders to certain lienholders. For the reasons stated below, we are persuaded that both errors assigned by the appellants have merit.

The general purpose of the federal Truth-in-Lending Act is "to assure a meaningful disclosure of credit terms" to consumers. Section 1601, Title 15, U. S. Code. Under provisions of the Act, a creditor is required to furnish a consumer with notice setting forth the right to rescind a contract in which a security interest is retained. The consumer must elect to rescind within three days from the date of its execution, or the "delivery of disclosures" required by law, whichever is later. [1] The purpose of this provision of the Act was to protect homeowners from the unscrupulous business tactics of certain home improvement contractors.

Pursuant to Section 1604 of the Truth-in-Lending Act (effective May 29, 1968), which directs the Federal Reserve Board to "prescribe regulations to carry out the purposes of this sub-chapter," the Board provided that a consumer shall have the right to rescind a credit transaction within three days from the date of its execution where a security interest is or will be retained by a creditor in the consumer's home. [2] The terms "security interest" and "security" are defined to mean "any interest in property which secures payment or

---

[1] Section 1635 (a), Title 15, U. S. Code, which provisions were in effect in 1971, reads in relevant part:

"***[I]in the case of any consumer credit transaction in which a security interest is retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following consummation of the transaction of the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor***. The creditor shall clearly and conspicuously disclose***to any obligor in a transaction subject to this section the rights of the obligor under this section.***"

It is not disputed by the parties that this is a consumer credit transaction involving security interests in a consumer residence; nor is it disputed that proper notice of rescission was given by T.F.F. Construction Co. The exception provided in Section 1635 (e), effective in 1971, is not applicable to the issues involved herein.

[2] 12 C.F.R., Section 226.9 (a) (1978).

performance of an obligation. The terms include, but are not limited to***mechanic's materialman's***and other similar liens.***" [3] The validity of these regulations have been judicially upheld on several occasions: See *N. C. Freed Co.* v. *Board of Governors* (C.A. 2, 1973), 473 F. 2d 1210; *Gardner and North Roofing and Siding Corp.* v. *Board of Governors* (C.A.D.C., 1972), 464 F. 2d 838; *Dogett* v. *County Savings and Loan Co.* (E.D. Tenn. 1973), 373 F. Supp. 774; *Gerasta* v. *Hibernia National Bank* (E.D. La. 1976), 411 F. Supp. 176; *Hobbs Lumber Co.* v. *Shidell* (1974), 71 Ohio Ops. 2d 135.

The appellants interpret the Act and the applicable regulations to mean that creditors have a duty not only to give notice of the right of a consumer to rescind the credit transaction, but also requires disclosure of the possibility of present or future liens affecting the consumer's residence. The Binders argue that since they were not warned of the possibility of a mechanic's lien, there was noncompliance with the Act and are entitled to indemnification for payments made in satisfaction of liens levied against their residence.

The federal courts have uniformly held that a reasonable construction of the Act is "that Congress intended to require disclosure of all the consequences flowing from the signing of a home improvement contract, including not only the consequences spelled out in the contract, but also those necessarily inherent therein." *Gardner, supra,* at 842. The court emphasizes the need for such protection by reciting the testimony given before congressional committees in which witnesses testified about consumers paying double for work because artisans, unpaid by an unscrupulous contractor, filed mechanics' liens. As the *Gardner* court stated, any other construction would expose the homeowner "to hidden and perhaps fatal traps; it would lead to precisely the kind of imposition that Congress intended to prevent." *Gardner, supra,* at 842.

In *N. C. Freed Co., supra,* the second circuit speaks extensively of the broad regulatory ambit of section 125 (a), as amended Section 1635 (a) (1968), Title 15, U. S. Code:

"It is clear to us that in Section 125 (a) Congress intended to establish a national policy of protecting consumers

---

[3] 12 C.F.R., Section 226.2 (z), now known as Section 226.2 (gg) (1978).

whose residences are jeopardized by operation of all types of security interests acquired by creditors in the home improvement industry, and that the goal was to provide uniform protection throughout the nation, irrespective of the vagaries among the states' lien laws. *Because of the various differences among the states in the treatment of statutory liens, and the opportunities for evasion of Section 125 (a) which these differences make possible, consumers can be effectively protected only if all statutory liens are included within the regulatory ambit of that Section. With an awareness of the multifarious pitfalls created by statutory liens, through which a homeowner may unwittingly lose one of his most precious possessions, his home, it would be most incongruous for us to construe Section 125 (a) in the manner urged by the appellees: that is, that Congress intended the statute to require disclosure and three-day right of rescission as to some, but not all of the various security interests created by a home improvement contract. We think that the only way in which the Act's objective of 'meaningful disclosure' of credit terms may be achieved is if the various statutory liens are included and treated uniformly under the Truth-in-Lending Act.\*\*\**" 473 F. 2d at 1216. (Emphasis added.)

Although the *Gardner* and *N. C. Freed Co.* courts were specifically concerned with the scope of Federal Reserve Board regulations as to when notice of rescission is required of creditors, their logic is persuasive in resolving the issue in the instant case. For example, in a fact situation similar in important respects to the instant one, the court in *Gerasta, supra,* found the reasoning of *Gardner* and *N. C. Freed Co.* persuasive and held that the possibility of a materialman's lien should have been disclosed in a separate statement to the consumer:

"Although the contract executed between Mr. Gerasta and Building Materials contained some language concerning such a lien, it is the plaintiffs' contention that the possibility of a security interest in the property, by way of a materialman's lien, should have been revealed in a disclosure statement.

"Building Materials received payment, for the work it was to perform, when the transaction was consummated. For

this reason, there would be no basis for a statutory lien in its favor and none would arise.

"By contract, however, Building Materials requires the property owner to allow the work to be completed, at least in part, by subcontractors. If Building Materials, as the prime contractor, fails to pay its subcontractors, carpenters, laborers, etc., or materialmen, the latter could also levy on the property to collect payment, regardless of the fact that the owner may have satisfied his obligation to the prime contractor.

"The Truth-in-Lending Act is remedial in nature and, as such, its terms are to be liberally construed in favor of the consumer. (Citation omitted.) *We find, therefore, that the possibility of a materialman's lien should have been disclosed to the plaintiffs. To hold otherwise would be to frustrate the intended purpose of the Act which is, as we have said, to promote the informed use of credit."* (Citation omitted.) (Emphasis added.)

Furthermore, legislative history of the Act clearly demonstrates the intent of Congress: "Any credit transaction which involves a security interest in property must be clearly explained to the consumer as involving a mortgage or lien.***"[4]

Therefore, to ensure the "meaningful disclosure" intended by Congress, any security interest held or to be retained or which might be acquired by any creditor in a consumer credit transaction affecting a consumer's residence must be clearly and explicitly disclosed by the creditor in a separate statement.

In the case at bar, T.F.F. provided notice of the right to rescind the contract, and it read, in pertinent part:

"NOTICE TO CUSTOMER
REQUIRED BY FEDERAL LAW

"You have entered into a transaction on June 3, 1971, which may result in a lien, mortgage or other security interest on your home. You have a legal right to cancel this transaction, if you desire to do so, without any penalty or

---

[4] 114 Cong. Rec. 14388 (1968) (remarks of Representative Sullivan) as cited in *N. C. Freed Co., supra.*

obligation within three business days from the above date.***"

There is no question that this constitutes sufficient notice of the right to rescind as it complies exactly with the form required under 12 C.F.R., Section 226.9 (b). However, the notice given by T.F.F. is insufficient *disclosure* to the appellant Binders of the possibility of mechanics' lien affecting their property by operation of state law. Although the notice contained some language regarding security interests, a separate disclosure statement should have been issued to the Binders to the effect that a mechanic's lien was a possibility and that it might result in the Binders becoming obligated to subcontractors or materialmen who are not paid by their contractor. In this way, consumers would be alerted to scrutinize the reliability and reputability of the contractor and rescind those contracts which they may have impetuously signed. No real benefit accrues to a consumer by granting a right of rescission when effective exercise of that right is restricted by lack of disclosure of such relevant information as possible mechanics' liens or other security interests. This goes to the very heart of the Act. Therefore, all possible security interests which are retained or could be acquired in the consumer's residence in any credit transaction must be clearly explained to the consumer in order to achieve the statutory goal of providing "meaningful disclosure." We find the first error assigned by appellants is well taken.

In their second assigned error, the appellants contend that because Cardinal was the assignee of the original promissory note the mortgage to T.F.F., it is equally liable for T.F.F.'s failure to disclose the possibility of a mechanic's lien. This assignment is also well taken.

Section 1640 (d), Title 15, U. S. Code, (Eff. 1969), states:
*"Liability of subsequent assignees of original creditor*

*"(d) Any action which may be brought under this section against the original creditor in any credit transaction involving a security interest in real property may be maintained against any subsequent assignee of the original creditor where the assignee, its subsidiaries, or affiliates were in a continuing business relationship with the original creditor either at the time the credit was extended or at the time of the assignment,* unless the assignment was involuntary, or the

assignee shows by a preponderance of evidence that it did not have reasonable grounds to believe that the original creditor was engaged in violations of this part, and that it maintained procedures reasonably adapted to apprise it of the existence of any such violations." (Emphasis added.)

Several courts have held that an assignee of a note cannot escape liability under the Act. Thus, in *Garza* v. *Chicago Health Clubs, Inc.* (N.D. Ill. 1972), 347 F. Supp. 955 the court stated:

"***[A]ssignees of consumer retail installment credit contracts who regularly extend or arrange for the extension of credit through the assignors of such contracts may themselves be 'creditors' within the meaning of, and subject to liability under, Truth-in-Lending.***" 347 F. Supp. at 964.

And in *Kriger* v. *European Health Spa* (E.D. Wisc. 1973), 363 F. Supp. 334, the court found assignee liability and emphasized the close business relationship between the bank (assignee) and the spa (assignor).

The following facts are disclosed by the record. The note, mortgage and completion certificate were all preprinted with Second Federal's (*i.e.,* Cardinal's) name. Furthermore, Cardinal admits in its brief that T.F.F. negotiated the note and assigned the mortgage to Cardinal "in the ordinary course of business." These facts suggest an ongoing relationship between T.F.F. and Cardinal which is similar, though not as close as that described in *Garza* and *Kriger, supra.* Moreover, it is not unusual in the home improvement business for banks or other creditors to play an important part in financing the contracts entered into by home improvement contractors.[5]

Finally, Cardinal argues that in a joint creditor situation,[6] it does not have a separate, independent obliga-

---

[5] Hearings on S. J. Res. 130, S. 3065 and S. 3066 before the Senate Commerce Committee, 90th Cong., 2d Sess. 43, 70, 241-42 (1968).

[6] The disclosure requirements of the Act are imposed only on "creditors," Section 1631 (a), Title 15, U. S. Code, which, as defined in the Act, include those who "regularly extend, or arrange for the extension of credit for which the payment of a finance charge is required.***" Section 1602 (f). The Federal Reserve Board has further defined the term "creditor" to mean one "who in the ordinary course of business regularly extends or arranges for the extension of consumer credit, or of-

tion to make the disclosures required by the Act, citing *Manning* v. *Princeton Consumer Discount Co., Inc.* (C.A. 3, 1976), 533 F. 2d 102. Appellee Cardinal contends that only the original seller-creditor (T.F.F.) has the obligation to disclose. This argument is irrelevant to the disposition of the second assigned error since Cardinal had the responsibility under Section 1640 (d) of the Act to apprise itself of the fact that required disclosures were made by T.F.F. Since there is no evidence in the record that Cardinal attempted to apprise itself of the existence of any violations of the Act by T.F.F., and since there is an apparent "continuing business relationship" between Cardinal and T.F.F., Cardinal is liable to the Binders pursuant to Section 1640 (d), Title 15, U. S. Code, as the subsequent assignee of the original creditor, T.F.F.

Accordingly, we reverse the judgment of the trial court and enter judgment for the appellants in the amount of $1,562.90, plus costs.

*Judgment reversed.*

PARRINO, P. J., and DAY, J., concur.

---

fers to extend or arrange for the extension of such credit." 12 C.F.R., Section 226.2 (m). There can be no doubt that Cardinal is a creditor in the ordinary course of business and T.F.F. is an "arranger of credit" as defined in 12 C.F.R., Section 226.2 (f).