MORRIS ANDERSON, DOING BUSINESS AS ANDERSON
HEATING AND PLUMBING, APPELLEE, IMPLEADED WITH
BCDJ INVESTMENTS, INC., FORMERLY HILLCREST
MOBILE HOMES, INC., ET AL., APPELLANTS, V.
GAYLE A. WAGNER ET AL., APPELLEES.
296 N.W.2d 455

Filed August 15, 1980. No. 42789.

David T. Schroeder for appellants.

Schneider & Nisley for appellee Wagner.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

This is an appeal from an order of the District Court for Keith County, Nebraska, which sustained the defendants Wagners' motion for summary judgment and dismissed the petitions to foreclose mechanic's liens of the various plaintiffs.

On July 24, 1975, the Wagners contracted with a builder by the name of Ed Roggasch to custom build a house for their use as a home. The various plaintiffs furnished, at Roggasch's request, materials or labor delivered to the job site for use in the construction

process. The plaintiffs were not paid in full by the contractor, Roggasch, so they filed mechanic's liens and brought this action against the Wagners to foreclose those liens. In January of 1977, the defendants Wagners filed an answer in the nature of a general denial, as well as separate cross-petitions, alleging defective workmanship and breach of warranty by the plaintiffs. Later, in February of 1978, the Wagners filed an amended answer, containing an assertion that each of the mechanic's liens was the result of a consumer credit transaction within the meaning of 15 U.S.C. §§ 1601 et seq. (1976, Supp. II 1978), popularly known as the federal Truth in Lending Act, and Regulation Z, 12 C.F.R. Part 226 (1980), promulgated by the Board of Governors of the Federal Reserve System in accordance with 15 U.S.C. § 1604. It was their specific claim that such transactions resulted in the acquisition or retention by the plaintiffs of a security interest in the Wagners' home, in which event the Act required notice to the Wagners of their right to rescind, which was not given, causing the liens to become void.

The record on appeal consists of a very short bill of exceptions containing some oral stipulations identifying and consenting to receipt into evidence of various exhibits. The exhibits consist of the building contract between the Wagners and Roggasch, a copy of Regulation Z, answers of the plaintiffs to certain interrogatories propounded by the Wagners, and the entire trial court file, which appears as a 390-page transcript. A large portion of that transcript is wholly unnecessary for the purpose of this appeal.

The basic contract executed by Roggasch and the Wagners is not remarkable in any of its particulars. Roggasch agreed to build a house according to certain specifications and to furnish all materials and perform all work necessary to accomplish the same. The total price which the Wagners were obligated to pay was $37,500, payable in three 30 percent progress payments, and a final 10 percent payment on completion of the

project. There was no provision in the contract requiring the payment of interest by the Wagners. For the purpose of this appeal, it can be assumed that the various plaintiffs furnished materials or labor to the project for which they have not been paid in full. The plaintiffs concede that they did not furnish any notice to the Wagners of any right to rescind, as required by the Act and Regulation Z, pertaining to any covered transactions. However, it is the plaintiffs' contention that they were not creditors of the Wagners within the meaning of the Act and that, therefore, its requirements did not apply.

The plaintiffs' petition does allege that the labor and materials were "furnished and delivered at the specific instance and request of Edwin Roggasch, a general contractor, who was acting on and in behalf of the defendants." However, this allegation was met with a general denial contained in the Wagners' pleadings. Additionally, the plaintiffs, in their answers to the Wagners' interrogatories, deny that any of them had any contact or agreement whatsoever with the Wagners to furnish materials or labor, but assert that all agreements were made with Roggasch; that he is the one for whom any credit was agreed to or, in fact, provided. There is no evidence that any of the plaintiffs were charging interest on any credit extended other than a prayer for interest at the legal rate from the time of filing their mechanic's liens.

The applicable federal statute, 15 U.S.C. § 1635 (1976), provides, in part, as follows: "(a) . . . [I]n the case of any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures . . . whichever is later . . . . The creditor shall clearly . . .

disclose . . . to any obligor . . . the rights of the obligor under this section. . . .

"(b) When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor . . . becomes void upon such a rescission."

Several other portions of the Act should be helpful in the resolution of the issues in this case. Section 1601 (1976) contains the Congressional declaration of purpose and provides, in part, as follows: "The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. . . . It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . ."

Appropriate definitions contained in § 1602 (1976) are as follows:

"(e) The term 'credit' means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

"(f) The term 'creditor' refers only to creditors who regularly extend, or arrange for the extension of, credit . . . for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise.

. . . .
"(h) The adjective 'consumer,' used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, household, or agricultural purposes."

Utilizing the plain meaning of the language employed in the statutory sections set forth above, several conclusions would appear to be inescapable. In the first

place, the creditor's duty to disclose relates to his obligor only. Secondly, a creditor, within the meaning of the Act, is limited to a creditor who regularly extends or arranges for the extension of credit for which a finance charge is required. Thirdly, the person to whom credit is extended must be a consumer, i.e., the money, property, or services which are the subject of the transaction are primarily for the obligor's personal or household use. Finally, the entire purpose of the Act is to assure a meaningful disclosure of credit terms so that the consumer can compare the various credit terms available and eliminate the uninformed use of credit. Looking at the fact situation in this case, the creditors' (plaintiffs') obligor was Roggasch, not the Wagners. There is nothing to indicate that the plaintiffs are creditors who regularly extend credit for which a finance charge is required. The person to whom credit was extended by the plaintiffs was Roggasch, the contractor, who is not the one who contemplated use of the materials or services for his personal or household use. Lastly, inasmuch as there is no evidence of finance charges having been made, there would seem to be no "credit terms" to be compared with "various credit terms available" within the meaning of the purposes of the Act. Basic though these assertions may be, nevertheless we are obligated to examine any existing federal court cases because, in the administration and interpretation of federal legislative acts, pertinent opinions of the federal courts are binding upon the state courts. *Bocian v. Union P. R. Co.*, 137 Neb. 318, 289 N.W. 372 (1939).

In further explaining the declared purpose of the Truth in Lending Act, contained in 15 U.S.C. §§ 1601 et seq., the Court of Appeals in *N. C. Freed Co., Inc. v. Board of Governors of Fed. Res. Sys.*, 473 F.2d 1210, 1214 (2d Cir. 1973), stated that the Act was remedial in nature, "designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation." No such practices appear to be present in this case.

*Freed* was a declaratory judgment and injunction action brought by two corporations engaged in the home improvement industry. The plaintiffs challenged the authority of the Federal Reserve Board in promulgating 12 C.F.R. § 226.9(a), which expanded the then-applicable language of 15 U.S.C. § 1635(a) (1970) to require notice of rescission in credit transactions from "wherein a security interest is retained or acquired" to "where a security interest is or will be retained or acquired." The basic issue was whether the possibility of mechanic's liens was a security interest. The court found that it was the intention of Congress in requiring notice to protect the consumer from all types of security interests, including mechanic's liens. It held, therefore, that the Federal Reserve Board acted within its authority in initiating the cited regulation. In explaining its holding, the court employed language which, on the surface, at least, seems to lend support to the Wagners' position: "One 'economic reality' of the home improvement industry is that, in work such as that performed by the appellees, second mortgages and statutory liens are used extensively to secure payment of home improvement contracts that are ordinarily 'insecure' business ventures. . . .

"The typical home improvement contract is procured, usually under pressure conditions, by a prime contractor . . . who frequently possesses little or no capital of its own; the actual work is often done by various subcontractors. . . . Thus, if the homeowner should default in payment to the prime contractor, the latter could levy on the home to obtain payment . . . . But even though the prime contractor may waive its liens in the contract, it usually cannot waive statutory liens arising in favor of subcontractors, so that if the prime contractor fails to pay its subcontractors the latter can also levy on the home to collect payment. Conceivably, then, . . . even if the homeowner has already paid the prime contractor, in order to protect his home from subcontractor statutory liens, he may also have to pay the subcontractors, thus paying twice for the same work." *Freed* at 1214-15.

However, in *Freed* there was no issue as to any obligation of a potential lienholder simply because of his status as a materialman. Rather, the emphasis was upon the duty of a party-creditor to the contract itself. In fact, the court quoted with approval the following language from *Gardner & North R. and S. Corp. v. Board of Gov's. Fed. Res. Sys.*, 464 F.2d 838 (D.C. Cir. 1972): " 'We think it a reasonable construction of the statute that Congress intended to require disclosure of all the *consequences flowing from the signing of a home improvement contract,* including not only the consequences spelled out in the contract, but also those necessarily inherent therein.' " *Freed* at 1216 (emphasis supplied).

The holding in *Gardner* was identical to that of *Freed,* i.e., that the possibility of a mechanic's lien required disclosure by the contractor-creditor to the homeowner as a security interest retained or to be acquired. The language was also similar: "In general the purpose of the Consumer Credit Protection Act was *'to assure a meaningful disclosure of credit terms,'* to consumers. 15 U.S.C. § 1601. The *specific purpose* of section 125(a), 15 U.S.C. § 1635(a), *was to protect homeowners from* the *unscrupulous* business tactics of certain *home improvement contractors.* The need for such protection was emphasized in testimony before congressional committees concerning *'second mortgage' racketeers* who encumbered their customers' houses to secure payment for unneeded or shoddy work. There was also reference to the liens of artisans, materialmen and others arising by operation of law which could subject a consumer's property to loss by foreclosure. . . .

"A contract to *renovate, remodel* or *repair* a house imports that work will be done by mechanics and artisans and that materials will be furnished in connection with that work. Implicit in the contract, therefore, is a provision that a lien will attach to secure payment for the work and materials. In other words, *the statutory provision for mechanic's* and materialmen's *liens must be taken as a part of the contract.* . . .

"We think it a reasonable construction of the statute that Congress intended to require disclosure of all the *consequences flowing from the signing of a home improvement contract,* including not only the consequences spelled out in the contract, but also those necessarily inherent therein." *Gardner* at 841-42 (emphasis supplied).

We believe that the language from the foregoing cases demonstrates that although the possibility of mechanic's and materialman's liens are "security interests," nevertheless the duty to disclose the existence of the same arises at the time of signing the improvement contract, not from time to time as deliveries of goods and services are made to the building site. Prior to such delivery, the identity of possible lienholders may not be known to anyone, and we suggest that absent a credit agreement between them and the homeowner, they do not become a "consumer creditor" under the Act.

Illustrative of that last statement is the case of *Gerasta v. Hibernia Nat. Bank,* 411 F. Supp. 176 (E.D. La. 1975), *supp. op.,* 411 F. Supp.194 (E.D. La. 1976). In that case the plaintiffs, Gerastas, signed a contract with one of the defendants, U. S. Building Materials Co., Inc., to renovate certain residential property of the Gerastas. The signed contract contained, among other provisions, permission for the U. S. Building Materials Co. to attempt to obtain a loan for the owners through a reliable source. This was done. A representative of the contractor completed the loan application to be submitted to the defendant bank, although the Hibernia National Bank actually prepared the loan papers which were signed by the Gerastas. The court held that U. S. Building Materials was neither a creditor nor an arranger of credit and, therefore, not subject to the Act's provisions relating to disclosure. Certain of the language of the court is instructive: "The provisions of the Act apply to and our jurisdiction depends upon an extension of credit, wherein the underlying transaction qualifies as a consumer credit transaction and not one for 'busi-

ness or commercial purposes.' . . . 'Consumer credit' is defined as 'credit offered or extended to a natural person, in which the money, property, or service . . . is primarily for personal . . . purposes and for which either a finance charge is or may be imposed or which pursuant to an agreement, is or may be payable in more than four installments.' . . .

"In determining whether a particular transaction is exempt, 'the purpose of the transaction or extension of credit is controlling' and not the property which is the subject of the security interest involved. . . .

"The disclosure requirements, however, are imposed only on 'creditors,' or those who 'regularly extend, or arrange for the extension of credit for which the payment of a finance charge is required, whether in connection with loans, sales of property or services, or otherwise.' . . .

"By contract, however, Building Materials requires the property owner to allow the work to be completed, at least in part, by subcontractors. If Building Materials, as the prime contractor, fails to pay its subcontractors . . . or materialmen, the latter could also levy on the property . . . regardless of the fact that the owner may have satisfied his obligation to the prime contractor. . . . We find, therefore, that the possibility of a materialman's lien should have been disclosed [by Hibernia National Bank] to the plaintiffs." *Gerasta* at 185, 187-88.

In spite of the language employed in the above cases, the opinions have concluded that the obligation of one to give notice of the right to rescind depends upon one's status as a *creditor* of the obligor or owner, and not upon one's position as a potential lienholder.

Apparently the latest case in this area is *Rudisell, et al. v. Fifth Third Bank*, No. 77-3206 (6th Cir. May 20, 1980). In that case, the Rudisells had contracted for the installation of aluminum siding with Aluminum Wholesale Distributors, Inc. (AWD), and at the request of the Rudisells, AWD went to the defendant bank, which

agreed to extend the necessary credit. AWD returned to the Rudisells with the loan papers for signature. AWD completed the work and assigned the note to the defendant bank and received payment. The Rudisells became dissatisfied with the work and notified Fifth Third that they rescinded their contract. The Rudisells claimed that because AWD, as contractor, had a right to a mechanic's lien, which is a security interest which was never disclosed by Fifth Third, they had a continuing right to rescind. The court said that "[a]n unrecorded mechanic's lien is not outside the definition of a security interest solely because it was not created by the financing documents." *Id.* at 8-9. The court went on to hold that both AWD and Fifth Third were creditors of the Rudisells, so that the "mechanic's lien which would arise by operation of law is one in favor of a creditor" and the Fifth Third having failed to disclose this possibility, the right to rescind remained extant. *Id.* at 17. However, the following language of the court is pertinent to a decision in the present case: "Had appellee [Fifth Third] loaned the money directly to appellants [Rudisells], and appellants then used the money for a cash sale from A.W.D., clearly A.W.D. would not have arranged or extended credit and would not have been a creditor. As Fifth Third Bank would have been the only creditor, a mechanic's lien, which would run in favor of A.W.D. and not Fifth Third, would not have run in favor of a creditor. . . .

"Although merely helping the debtor fill out the forms may not be enough to make one an arranger of credit under TILA [citations omitted], A.W.D. did more. It agreed to allow appellants to defer payment. Thus, A.W.D. was a creditor and the mechanic's lien which would arise by operation of law is one in favor of a creditor." *Rudisell* at 16-17.

We believe the plaintiffs in the present case fall in the same category as AWD in the hypothetical example set forth above, and the liens which they held did not run in favor of a creditor.

It is true all possible security interests which are retained or could be acquired in a consumer's residence must be clearly explained by the creditor. In *Supply Co. v. Binder*, 60 Ohio App. 2d 91, 395 N.E.2d 907 (1978), the Binders had contracted with T.F.F. Construction Company for the construction of a garage. As part of the contract, T.F.F. gave the Binders notice of the right to rescind under the Act. The Binders executed a note in satisfaction of their contractual obligation to T.F.F. which, in turn, assigned the same to Cardinal Federal Savings and Loan. T.F.F. failed to pay the plaintiff, one of the materialmen, who filed a lien against the Binders' home. After this suit was filed by the materialman Collingwood, the Binders settled the lien and cross-complained against Cardinal. The Ohio court held that although the contractor, T.F.F., had given adequate notice of the right to rescind, its notice was insufficient disclosure to the Binders of the possibility of mechanic's liens. As a result, both T.F.F. and Cardinal, as the assignees of the note, were held liable to reimburse the Binders for their payments to the materialmen. The court said: "[A] separate disclosure statement should have been issued to the Binders to the effect that a mechanic's lien was a possibility and that it might result in the Binders becoming obligated to subcontractors or materialmen who are not paid by their contractor. In this way, consumers would be alerted to scrutinize the reliability and reputability of the contractor and rescind those contracts which they may have impetuously signed." *Id.* at 911. This case indicates that the responsibility under the Act rests with the creditor — the prime contractor and its financial backer — and not with the materialman.

The Wagners cite another Ohio case, *Hobbs Lumber Co. v. Shidell*, 42 Ohio Misc. 21, 326 N.E.2d 706 (1974), as supporting their contention that materialmen must comply with the provisions of the Act. It is true that the finding of the court was "that the liens of Arrow and Hobbs [materialmen] are invalid, null and void for

failure of said lienholders to comply with the federal Truth-in-Lending Act." *Id.* at 26, 236 N.E.2d at 709. However, two comments are appropriate regarding that case. First of all, the facts do not disclose whether or not the lienholders had dealt directly with the owners, which, if they had, would make them creditors within the Act, and under obligation to comply with its provisions. On the other hand, if the facts were such that they had dealt only with the general contractor of the owners, then they were not creditors. In that event, the authorities cited by the Ohio court — 15 U.S.C. §§ 1601 et seq., *Gardner, Freed,* and the Ohio case of *Hank's Inc., v. Fisher,* 38 Ohio App. 2d 1, 310 N.E.2d 259 (1973) — depend upon the status of the lienholders as creditors to have the Act apply.

The Wagners set out in their brief a 1969 Federal Reserve Board letter, which suggests that even though the materialman had no contract or dealing with the owners, nevertheless, if the contractor fails to give notice of the possibility of a materialman's lien, the security interest of both the materialman and the contractor will be voided. The apparent suggestion of the author of that letter to the materialman, in order to avoid that predicament, is that upon receiving an order for a delivery of ready mixed concrete, or whatever, he should obtain proof positive that the contractor has given the proper notice, or he himself must do so, and then he must wait 3 days before making the delivery. Two answers to that advice readily appear. In the first place, the board's letters are not binding on the court. *Rudisell, supra,* and *Eby v. REB Realty, Inc.,* 495 F.2d 646 (9th Cir. 1974). Secondly, "Unnecessary confusion would arise [in the homebuilding industry] if we were to interpret 15 U.S.C. § 1635 in this manner." *Mid America Homes, Inc. v. Horn,* _____ Ind. App. _____, 377 N.E.2d 657, 661 (1978). In that case, the Horns contracted with Jamco Builders to build a house for them, to be used as their residence. Jamco ordered and received from Mid America a "'house and trim package.'" Jamco failed to pay Mid

America, and the latter filed this action to foreclose its mechanic's lien. The Horns raised the same defense as did the Wagners here. The Indiana court said: "In the instant case, the credit was not extended to consumers (the Horns), but instead to Jamco, a commercial entity. Although the property to which the lien attached was a private residence, the purpose of the transaction was to secure materials so that Jamco could construct a house. Only Jamco, after evaluating the terms of credit, could have selected its creditor. The Horns never acquired the right to rescind the credit transaction because they were not parties to the transaction. . . .

"We hold that the Truth in Lending Act requires disclosure under 15 U.S.C. § 1635 only in instances in which the potential lien holder deals directly with the homeowner." *Mid America Homes, Inc.*, at 660-61. In so holding, the Indiana court, in a footnote, stated that they declined to follow *Hobbs Lumber Company v. Shidell, supra.* We agree.

We will make a final note in reference to a federal regulation which may or may not apply to the fact situation in the instant case. We have previously set forth 15 U.S.C. § 1635 and the federal cases which construe it to require a creditor to disclose the possibility of statutory mechanic's liens arising against the subject property to the consumer receiving credit. The following states the exemption from that section: "(e) This section does not apply to the creation or retention of a first lien against a dwelling to finance the acquisition of that dwelling or to a consumer credit transaction in which an agency of a state is the creditor." 15 U.S.C. § 1635(e).

The applicable regulation is as follows:

"(g) *Exceptions to general rule.* This section does not apply to:

"(1) The creation, retention, or assumption of a first lien or equivalent security interest to finance the acquisition of a dwelling in which the customer resides or expects to reside.

"(2) A security interest which is a first lien retained or *acquired by a creditor in connection with the financing of the initial construction* of the residence of the customer, or in connection with a loan committed prior to completion of the construction of that residence to satisfy that construction loan and provide permanent financing of that residence, whether or not the customer previously owned the land on which that residence is to be constructed." 12 C.F.R. § 226.9(g) (emphasis supplied).

It is not clear whether this language would specifically exempt a creditor retaining or acquiring a security interest anytime it arises in connection with the initial construction of a dwelling, and whether a statutory lien comes within the meaning of "security interest" in this context. However, it is our opinion that the Truth in Lending Act was not intended by Congress to become so involved in the building industry nor with state lien laws. "Congress intended to require disclosure of all the consequences flowing from the signing of a *home improvement contract* . . . . " *Gardner, supra* at 842 (emphasis supplied).

It is possible that, through its regulations, the Federal Reserve Board intended to exempt the construction of a new home and acquisition of a dwelling, and make the disclosure requirements applicable only to credit transactions in the home improvement industry rather than the home construction industry. It would be difficult to imagine that Congress would intentionally exempt a lending institution charging a high rate of interest from the Act's requirements but not exempt a contractor or subcontractor which allowed the consumer to extend payments over a period of time without charging interest, where both instances deal with construction of a new home.

However, we need not indulge in such speculation, nor need we decide the issue, since we have already determined that plaintiffs are not creditors within the meaning of the Truth in Lending Act, and therefore had no duty to make any disclosures pursuant to the Act.

The judgment of the trial court in sustaining the Wagners' motion for summary judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.