IN RE GUARDIANSHIP AND CONSERVATORSHIP OF
IDA GARCIA, AN INCAPACITATED PERSON.
ARTHUR GONZALES, GUARDIAN AND CONSERVATOR,
APPELLEE, V. SIMON AND BETTY GARCIA,
INTERESTED PERSONS, APPELLANTS.

631 N.W.2d 464

Filed July 13, 2001.   No. S-00-893.

John P. Weis, of Sorensen, Zimmerman & Mickey, P.C., for appellants.

Thomas T. Holyoke, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., for appellee.

HENDRY, C.J., WRIGHT, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

In this case, we are asked to consider whether a conservator may be allowed to "step into the shoes" of an incompetent settlor in order to amend a revocable trust that was created prior to the settlor's incompetency. For the reasons set forth herein, we reverse the decision of the lower court, which granted the conservator the right to make changes to the trust, and we remand the cause with directions that the conservator's petition be dismissed.

## SCOPE OF REVIEW

■ An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Estate of Jakopovic*, 261 Neb. 248, 622 N.W.2d 651 (2001).

■ In instances where an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record. *Mid City Bank v. Douglas Cty. Bd. of Equal.*, 260 Neb. 282, 616 N.W.2d 341 (2000).

## FACTS

Arthur Gonzales, the guardian and conservator of Ida Garcia (Garcia), filed a petition in Scotts Bluff County Court requesting that he be allowed to exercise Garcia's rights under the

fourth restatement of the Ida Garcia Revocable Trust Agreement (Trust Agreement), including the right to amend, modify, or revoke the Trust Agreement. Following a trial, the county court granted Gonzales the relief sought in his petition. Simon and Betty Garcia (hereinafter referred to as "the appellants"), as interested persons and beneficiaries of the Trust Agreement, timely perfected this appeal. We moved this matter to our docket pursuant to our statutory authority to regulate the caseloads of this court and the Nebraska Court of Appeals.

The record shows that on July 8, 1997, Garcia executed the fourth restatement of her Trust Agreement. The validity of the Trust Agreement was not contested at trial. When the trust was established on December 21, 1992, the appellants were named as trustees. The fourth restatement nominated Alfred Garcia as successor trustee and provided that if neither the appellants nor Alfred Garcia could serve as trustee, Norwest Bank Nebraska, N.A. (Norwest Bank), in Omaha, Nebraska, should serve as successor trustee. The fourth restatement of the Trust Agreement provided for specific monetary bequests to several relatives, including $300,000 to Simon Garcia and $100,000 to Betty Garcia.

On December 31, 1998, Gonzales was appointed guardian for Garcia, who had been determined to be mentally incompetent. Gonzales was appointed her conservator on June 10, 1999. The petition requesting the authority to exercise Garcia's rights under the fourth restatement of the Trust Agreement was filed by Gonzales on April 12, 2000.

At trial, Gonzales testified that Garcia is his aunt. He said that at the time the fourth restatement of the Trust Agreement was signed, Garcia was staying with the appellants in Omaha, but she has never lived in Douglas County, and it was not her intent to live there on a permanent basis. The Norwest Bank trust officer assigned to administer the Trust Agreement is located in Omaha. At the time of trial, Norwest Bank had been administering the trust for several years, including about 1 year before Gonzales was appointed conservator.

The second article of the Trust Agreement states:

> *Right to Amend, Revoke, or Give Gifts.* Grantor reserves the right to amend, modify, and revoke this Trust in whole or in part at any time and from time to time, and the

> Trustee agrees, upon the direction of the Grantor, to convey, assign, and deliver over to the Grantor any part or all of the assets held under this Agreement. Grantor further specifically reserves the right to withdraw any or all assets from the Trust and direct that the Trustee as agent for Grantor make gifts of any such assets to such person or entity as then specified by Grantor.

Gonzales testified that he did not believe he had the power to exercise the rights specified in the second article of the Trust Agreement and that he and Garcia had discussed the subject on a number of occasions. Gonzales stated that one change he wished to make was to move the trust to Scottsbluff, Nebraska. Gonzales said that the move would be in Garcia's best interests and that the move would make it more convenient for Gonzales to fulfill his responsibilities as conservator. He said Garcia's wishes were for the trust to be in Scottsbluff. The Platte Valley National Bank in Scottsbluff has expressed a willingness to become the trustee.

Gonzales testified that he has had communication problems with Norwest Bank, including difficulty in contacting the trust officer and determining who will prepare the tax returns for the estate. Bills have been sent to Gonzales, who then has had to return them to the bank, and there has been confusion about federal employer identification numbers for employees hired to assist Garcia. Gonzales said he needs to determine what to do with Garcia's car, which is part of the trust but which she does not use. The bank has stated that it does not want the car. Gonzales testified that he receives quarterly reports about the trust, but the reports are difficult for Gonzales to read. He also stated: "I don't feel like they've really acknowledged me as conservator or . . . guardian."

Upon cross-examination, Gonzales stated that Garcia was "not found incompetent" at the time the fourth restatement of the Trust Agreement was executed, but he believed she was "easily swayed." Gonzales further stated that the change in trustee was not the only change he had contemplated, rather "[m]y aunt has talked to me about some things that she'd like to do. . . . [H]er biggest wish is since she had the altercation with my uncle and my aunt, Simon and Betty Garcia, that she would like them removed from that trust." Gonzales said that, on behalf

of Garcia, he would like to change the provision of the trust which gives money to the appellants.

The parties stipulated to the receipt into evidence of a report from Garcia's guardian ad litem, who was appointed on December 3, 1998. After a visit with Garcia on April 27, 2000, the guardian ad litem reported that her condition had not changed greatly and that she continued to be unable to manage her own financial affairs and required the services of a guardian and a conservator.

On June 20, 2000, the county court granted Gonzales' petition and held that Gonzales "as the Conservator and Guardian of Ida Garcia has the right to exercise the rights of Ida Garcia under the Fourth Restatement of Ida Garcia Revocable Trust which include, but are not limited to, the right to amend, modify or revoke such trust."

The appellants filed a motion to withdraw the journal entry and order and a motion for new trial on June 27, 2000. They took issue because the journal entry was not approved as to form by their counsel and because the journal entry "contains language which is broad and expansive and allows the petitioner greater discretionary powers then [sic] requested." The motions were overruled, and this appeal was timely filed.

## ASSIGNMENTS OF ERROR

The appellants allege that the county court erred (1) in granting Gonzales the authority to amend, modify, or revoke the validly executed Trust Agreement; (2) in overruling their oral motion to have the pleadings conform to the evidence pursuant to Neb. Rev. Stat. § 25-852 (Reissue 1995); and (3) in failing to sustain their motion to withdraw the journal entry and order and in entering an order that was overly broad and not sustained by the evidence presented at trial.

## ANALYSIS

The county court granted Gonzales' petition and held that he has the right to exercise Garcia's rights under the Trust Agreement, which include, but are not limited to, the right to amend, modify, or revoke the trust. At the core of the disagreement between the parties is Neb. Rev. Stat. § 30-2637 (Cum. Supp. 2000), which states:

> The court has the following powers which may be exercised directly or through a conservator with respect to the estate and affairs of protected persons:
>
> . . . .
>
> (3) After hearing and upon determining by clear and convincing evidence that a basis for an appointment or other protective order exists with respect to a person for reasons other than minority, the court has, for the benefit of the person and members of his or her household, all the powers over his or her estate and affairs which he or she could exercise if present and not under disability except the power to make a will. These powers include, but are not limited to, power . . . to create revocable or irrevocable trusts of property of the estate which may extend beyond his or her disability or life . . . .

The appellants argue that § 30-2637(3) does not allow a conservator to change the provisions of a validly executed trust agreement. They assert that the statute allows the court to make decisions for an incapacitated person if the incapacitated person is the trustee or to order a successor trustee to replace the incapacitated person. In this case, the incapacitated person is the settlor, not the trustee. The appellants also assert that the trust was established when Garcia was competent and reflects her wishes at a time when she was able to make decisions. She has now been found to be incompetent and does not necessarily understand the consequences of changing the Trust Agreement.

Section 30-2637(3) has not previously been analyzed by this court. Gonzales asserts that the statute gives a conservator the right to take the place of a settlor in order to make changes to a trust, even if the settlor has become incompetent. In reviewing a statute, we have often held that in the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. See *Brandon v. County of Richardson*, 261 Neb. 636, 624 N.W.2d 604 (2001). If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning. *Vopalka v. Abraham*, 260 Neb. 737, 619 N.W.2d 594 (2000). Statutory

interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Daniels v. Allstate Indemnity Co.*, 261 Neb. 671, 624 N.W.2d 636 (2001).

Section 30-2637(3) provides that the court may exercise directly or through a conservator "all the powers over his or her estate and affairs which he or she could exercise if present and not under disability except the power to make a will." Thus, we conclude that the court may take action on behalf of a protected person or that the court may direct a conservator to take those actions if the court determines by clear and convincing evidence that such actions are in the best interests of the protected person.

We must determine whether § 30-2637(3) grants the court the power to exercise the rights reserved to the settlor in a trust agreement when the settlor has become incompetent. In the fourth restatement of the Trust Agreement, Garcia "reserve[d] the right to amend, modify, and revoke" the Trust Agreement, in whole or in part, at any time. Garcia, who was competent at the time she executed the fourth restatement of the Trust Agreement, did not provide that any guardian or conservator of her affairs should be granted the right to amend, modify, or revoke the trust.

█ Where there is no statute outlining a court's powers related to modification or revocation of a trust agreement, authorities have generally noted that only the settlor may amend, modify, or revoke a trust. "In the absence of express direction to the contrary, the power to revoke is personal to the settlor, when reserved to him, and does not pass to his successors in interest on his death, *nor is it transferable by him*." (Emphasis supplied.) George Gleason Bogert & George Taylor Bogert, The Law of Trusts and Trustees § 1000 at 322 (rev. 2d ed. 1983), cited in *In re Guardianship of Lee*, 982 P.2d 539 (Okla. App. 1999).

In *In re Guardianship of Lee*, the trial court found that the settlor created the trust for her own benefit during her lifetime and had specifically reserved the right of revocation and amendment of the trust. The settlor had also appointed Charles Lee as her attorney in fact, granting him power to " 'act in all matters with respect to all powers described herein as freely, fully, and effectively as I could or might to personally if present and of sound and

disposing mind.' " *Id.* at 541. The trial court found that such power of attorney permitted Charles Lee to revoke the trust and marshal the assets of the trust to be applied for the benefit of the settlor.

On appeal, the Oklahoma Court of Appeals determined this issue to be one of first impression and quoted the Oklahoma statute at issue:

> "If, following execution of a durable power of attorney, a court of the principal's domicile appoints a conservator . . . or other fiduciary charged with the management of all of the principal's property . . . the attorney-in-fact is accountable to the fiduciary as well as to the principal. The fiduciary has the same power to revoke or amend the power of attorney that the principal would have had if he were not disabled or incapacitated."

*In re Guardianship of Lee*, 982 P.2d at 541. See Okla. Stat. Ann. tit. 58, § 1074A (West 1995).

The Court of Appeals cited the "Bogert principle" and pointed out that in those jurisdictions where the issue has been addressed, the authority appears uniform that

> "[i]n the absence of express direction to the contrary, the power to revoke is personal to the settlor, when reserved to him, and does not pass to his successors in interest on his death, nor is it transferable by him. Bogert, The Law of Trusts and Trustees § 1000 at 322 (2d ed.1962); *Weatherly v. Byrd*, 566 S.W.2d 292, 293 (Tex.1978); *Webb v. St. Louis County National Bank*, 551 S.W.2d 869, 878 (Mo. App.1977); *Matter of Schroll*, 297 N.W.2d 282, 284 (Minn.1980)." *Matter of Marital Trust under John W. Murphey and Helen G. Murphey Trust*, 169 Ariz. 443, 819 P.2d 1029, 1030 (App.1991). See also, e.g., *Jones v. Clifton*, 101 U.S. 225, 11 Otto 225, 25 L.Ed. 908 (1879).

*In re Guardianship of Lee*, 982 P.2d at 541. Citing *Kline v. Utah Dept. of Health*, 776 P.2d 57 (Utah App. 1989), the Court of Appeals held that a trust reserving solely unto the settlor the power to revoke becomes irrevocable upon the settlor's incapacity, notwithstanding execution of an otherwise general, durable power of attorney, where the trust and power evince the settlor's intent that the revocation power be personal to the settlor.

In *Muller v. Bank of America, N.A.*, 28 Kan. App. 2d 136, 12 P.3d 899 (2000), the question before the court was whether the broad, general powers granted to the attorney in fact included the withdrawal of all trust assets, which would in essence revoke the trust. There was no language in the trust that either precluded or granted the attorney in fact the power to revoke or modify the trust. The court, in citing the Bogert principle, held that unless the settlor expressly states otherwise in the trust document or the power of attorney, the power to revoke a trust is personal to the settlor and is nondelegable.

■ We conclude, however, that we need not apply the Bogert principle here because § 30-2637(3) controls, rather than the terms of the Trust Agreement. The Trust Agreement did not provide that it would become irrevocable upon the incapacity of Garcia. Section 30-2637(3), adopted as part of the Nebraska Probate Code in 1974, was in existence prior to the execution of the fourth restatement of the Trust Agreement. The Legislature granted broad powers to the court which may be exercised directly or through a conservator with respect to the estate and the affairs of protected persons. Given the plain language of the statute, we conclude that § 30-2637(3) gives the court the power to amend or revoke a trust after the settlor becomes incompetent.

The Trust Agreement provided that Garcia, while competent, could have amended, modified, or revoked any provision therein. Pursuant to § 30-2637(3), the court may exercise all powers over the estate of the settlor which the settlor could exercise if he or she were not under disability, except the power to make a will. Therefore, § 30-2637(3) gives the court the power to amend, modify, or revoke a trust agreement "[a]fter hearing" and based upon "clear and convincing evidence." Before a conservator may exercise any power permitted by the statute, the court must determine by clear and convincing evidence that such actions are in the best interests of the protected person.

■ In this case, we find that there was insufficient evidence to support the county court's order. Clear and convincing evidence is evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *Records v. Christensen*, 246 Neb. 912, 524 N.W.2d 757 (1994).

At the hearing, the only evidence presented as a basis for transferring the trust to Scottsbluff was the testimony of Gonzales. Gonzales stated that he wanted to move the trust to Scottsbluff because it would be more convenient for him, because Garcia had told him that she wished for the trust to be located there, and because he had experienced difficulty in communicating with Norwest Bank in Omaha. Gonzales complained that although he receives quarterly reports from the bank, he has difficulty understanding them. Gonzales also testified that he wanted to remove the appellants from the trust.

Gonzales' testimony does not produce a firm belief or conviction about the existence of any fact to be proved. He did not present clear and convincing evidence that he, as conservator, should be granted the power to amend, modify, or revoke the provisions of the Trust Agreement. Garcia's alleged wishes to amend the Trust Agreement, stated only to Gonzales, are not sufficient because the guardian ad litem's report showed that Garcia was incompetent.

Because we determine that the county court erroneously granted Gonzales' petition, we find it unnecessary to address the appellants' remaining assignments of error.

## CONCLUSION

The county court erred in granting Gonzales' petition seeking to amend, modify, or revoke the Trust Agreement. We therefore reverse the decision of the Scotts Bluff County Court and remand the cause with directions to dismiss Gonzales' petition.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

CONNOLLY, J., not participating.