FIRST DATA CORPORATION AND THE MEMBERS OF THE UNITARY GROUP, APPELLANTS, V. STATE OF NEBRASKA, DEPARTMENT OF REVENUE, AND NEBRASKA STATE TAX COMMISSIONER, APPELLEES.

639 N.W.2d 898

Filed March 8, 2002.    No. S-00-716.

Gerald P. Laughlin, Kent O. Littlejohn, and Frank J. Reida, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, L.L.P., for appellants.

Don Stenberg, Attorney General, and L. Jay Bartel for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

First Data Corporation and the Members of the Unitary Group appeal the district court's judgment affirming a ruling by the State of Nebraska, Department of Revenue (Department), concluding that the appellants were not entitled to a sales tax refund pursuant to Neb. Rev. Stat. § 77-4105(3)(a)(i) (Supp. 2001) because its computer software was not "qualified property" as defined by Neb. Rev. Stat. § 77-4103(13) (Cum. Supp. 2000). Because we determine that the definition of "qualified property" includes the computer software at issue, we reverse the judgment of the district court.

## BACKGROUND

First Data Corporation, a Delaware corporation, is the parent company of First Data Resources, Inc., a Delaware corporation. First Data Corporation and its subsidiaries and sub-subsidiaries constitute the Members of the Unitary Group, hereinafter referred to collectively as "First Data." First Data is authorized to do business in Nebraska, conducts business in Nebraska, and has

executive offices located in Omaha, Nebraska. First Data is in the business of providing data processing services to its customers.

In 1987, the Nebraska Legislature enacted L.B. 775, codified as the Employment and Investment Growth Act, Neb. Rev. Stat. § 77-4101 et seq. (Reissue 1996, Cum. Supp. 2000 & Supp. 2001), to revise Nebraska's tax structure in order to encourage new business development in the State, retain and expand exist-. ing Nebraska businesses, promote the creation and retention of new Nebraska jobs, and attract and retain investment capital in the State. See § 77-4102. L.B. 775 specifically lists the performance of data processing services as a business to be encouraged under the act. § 77-4103(11)(ii).

In 1994, First Data submitted an application with the State through the State Tax Commissioner to utilize the tax incentives set forth in L.B. 775. Under L.B. 775, a taxpayer entering an agreement with the State receives certain income and sales tax benefits if the agreement contains one or more projects which together will result in the investment in qualified property of at least $10 million and the hiring of at least 100 new employees. § 77-4105(2). First Data and the State entered into a project agreement on July 6, 1994, under which First Data qualified to receive the L.B. 775 tax benefits. A letter from the Department indicates that First Data attained the minimum levels of investment and employment required by L.B. 775 in the tax year that ended December 31, 1994.

In 1996, First Data entered into a software enterprise license agreement with Computer Associates International, Inc. (CA), which provided First Data with a nonexclusive license for the use of certain computer software programs (CA software). First Data used the CA software in the performance of its data processing function. First Data received invoices for and paid sales tax with respect to payments made under the licensing agreement with CA.

In 1999, First Data filed a refund claim for overpayment of sales and use tax with the Department. For payments made with relation to the CA software, First Data claimed an overpayment of $1,435,581, which represents the amount of sales tax paid on the first four payments to CA for the CA software. First Data claimed a refund on the basis that the CA software constituted "qualified property" as defined by § 77-4103(12) (Reissue 1996).

The Department denied First Data's claim, concluding that the CA software did not constitute tangible property or a component of tangible property as required by the definition of "qualified property" under § 77-4103(12). On appeal, the Lancaster County District Court affirmed the Department's decision. First Data now appeals the district court's judgment, and pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals, we moved this appeal to our docket.

## ASSIGNMENT OF ERROR

First Data assigns that the district court erred in affirming the Department's determination that the CA software, which was the subject of the refund claim, was not "qualified property" as defined in § 77-4103(12).

## STANDARD OF REVIEW

Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Lackawanna Leather Co. v. Nebraska Dept. of Rev.*, 259 Neb. 100, 608 N.W.2d 177 (2000).

## ANALYSIS

The only issue on appeal is whether computer software is "qualified property" as defined by § 77-4103, such that the appellant is entitled to a sales tax refund pursuant to § 77-4105(3)(a)(i). "Qualified property," formerly defined under § 77-4103(12) (Reissue 1996), is now defined under § 77-4103(13) (Cum. Supp. 2000), though its definition has not changed. The statute defines "qualified property" as

> any tangible property of a type subject to depreciation, amortization, or other recovery under the Internal Revenue Code of 1986, or the components of such property, that will be located and used at the project. Qualified property shall not include (a) aircraft, barges, motor vehicles, railroad rolling stock, or watercraft or (b) property that is rented by the taxpayer qualifying under the Employment and Investment Growth Act to another person.

§ 77-4103(13).

First Data argues that the CA software is qualified property under two alternatives, either (1) the software is tangible property subject to depreciation, amortization, or other recovery under the Internal Revenue Code of 1986 (the Code) or (2) the software is a component of tangible property subject to depreciation, amortization, or other recovery under the Code. The parties have stipulated that computer software, including the CA software at issue, is subject to depreciation, amortization, or other recovery under the Code and is not subject to any of the exceptions listed in § 77-4103. Thus, First Data's appeal centers solely on whether the CA software constitutes tangible property or is a component of tangible property.

The district court analyzed First Data's appeal by applying the definition of "tangible property" under Nebraska law, rather than the definition of "tangible property" under the Code. The district court based this interpretation on the provision in § 77-4103, which states that unless the context otherwise requires, any term in the statute shall have the same meaning as that used in chapter 77, article 27, of the Nebraska Revised Statutes, as well as on the idea that L.B. 775 merely supplements existing Nebraska tax law rather than rewrites it.

First Data urges that the district court should have looked to the Code rather than Nebraska law to define "tangible property." We agree. L.B. 775's statement that it creates "[m]ajor revisions in Nebraska's tax structure" reveals that it supplants, not supplements, previous Nebraska tax law. § 77-4102(1)(b). Additionally, contrary to the district court's ruling, the Legislature clearly intended the term "tangible property" to be defined according to the Code. If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning. *In re Guardianship & Conservatorship of Garcia*, 262 Neb. 205, 631 N.W.2d 464 (2001). In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Rodriguez v. Monfort, Inc.*, 262 Neb. 800, 635 N.W.2d 439 (2001). The language of § 77-4103 unambiguously refers to tangible property subject to depreciation, amortization, or other recovery under the Code. The context of

§ 77-4103 requires that we determine the definition of tangible property using the Code. Thus, we shall interpret the term "tangible property" under the Code, not under Nebraska tax law.

The Department concedes (in fact, agrees) that the district court should have characterized the CA software as "tangible" or "intangible" property under the Code rather than under Nebraska tax law. Nevertheless, the Department urges that the district court's decision was correct, even if analyzed incorrectly.

We now turn to the applicable provisions of the Code, I.R.C. §§ 167 and 197 (1994), which deal with the depreciation and amortization of property, respectively, and provide guidance on the definition of tangible property subject to depreciation, amortization, or other recovery for the purposes of § 77-4103.

Section 167 allows a depreciation deduction for the exhaustion, wear and tear, and obsolescence of property used in a trade or business. § 167(a). Section 167(f) contains a provision for the treatment of computer software as property excluded from § 197, but does not provide any guidance in the definition of computer software other than a reference to its definition in § 197(e)(3)(B), cited below, and a notation that the § 167 definition does not include software that qualifies as an amortizable "section 197 intangible."

Section 197 entitles a taxpayer to an amortization deduction with respect to any amortizable § 197 intangible. Section 197(e) states that for the purposes of § 197, the term "section 197 intangible" does not include computer software which "(i) . . . is readily available for purchase by the general public, is subject to a nonexclusive license, and has not been substantially modified, and (ii) . . . is not acquired in a transaction (or series of related transactions) involving the acquisition of assets constituting a trade or business or substantial portion thereof." § 197(e)(3)(A). Section 197(e)(3)(B) defines computer software, for the purposes of § 197(e)(3)(A), as any program designed to cause a computer to perform a desired function; the term "computer software" does not include any database or similar item unless the database or item is in the public domain and is incidental to the operation of otherwise qualifying computer software. The CA software at issue appears, under this definition, to be excluded from the category of § 197 intangibles—First Data

holds a nonexclusive license to use the CA software, and the CA software was not purchased as part of the assets of a trade or business, but, rather, through an enterprise licensing agreement. The Code, however, does not specifically classify software excluded from a "section 197 intangible" as tangible or intangible property.

The U.S. Tax Court's ruling in *Norwest Corp. & Subs. v. Commissioner*, 108 T.C. 358 (1997), is persuasive in resolving this question. In *Norwest Corp. & Subs.*, the Tax Court concluded that software is tangible property for the purposes of federal investment tax credits. The software that the *Norwest Corp. & Subs.* court determined to be tangible property was (1) operating and applications software for the mainframe computer, (2) developed by third parties and sold to Norwest Corporation and its subsidiaries (Norwest) by a nonexclusive license, and (3) delivered to Norwest encoded on magnetic tapes or disks. Similarly, in the instant case, the parties stipulated that First Data's CA software was acquired through a nonexclusive license, delivered on magnetic tapes, and installed and stored on First Data's mainframe computer.

Although the decision in *Norwest Corp. & Subs.* applies specifically to tax investment credits, First Data argues, and we agree, that the definition of software as tangible property in *Norwest Corp. & Subs.* applies equally to the characterization of property for depreciation, amortization, and other recovery through the decision in *Hospital Corp. of Am. v. Commissioner*, 109 T.C. 21 (1997). In *Hospital Corp. of Am.*, the Tax Court determined that tests developed under prior law for the purposes of investment tax credits are applicable in determining what constitutes tangible personal property. Thus, *Hospital Corp. of Am.* links federal investment tax credits to property characterization for depreciation, amortization, and other recovery purposes. Although the Department argues that *Hospital Corp. of Am.* uses the term "tangible property" to distinguish from real property rather than intangible property, this distinction does not defeat the proposition that investment tax credit tests apply equally to classification of property. Indeed, *Hospital Corp. of Am.* specifically holds that tests developed under prior law for purposes of investment tax credits apply when deciding whether, for the purpose of

depreciation recovery classes or periods, the property at issue constitutes tangible property.

While such federal decisions are not binding on this court for the interpretation of the words "tangible property" as used in L.B. 775, we are persuaded by the Tax Court's decisions in *Norwest Corp. & Subs., supra,* and *Hospital Corp. of Am., supra.* " '[W]e are obligated to examine any existing federal court cases because, in the administration and interpretation of federal legislative acts, pertinent opinions of the federal courts are binding upon the state courts.' " *Darr v. Long,* 210 Neb. 57, 66-67, 313 N.W.2d 215, 220 (1981) (quoting *Anderson v. Wagner,* 207 Neb. 87, 296 N.W.2d 455 (1980)). Thus, based on the Tax Court's decisions in *Norwest Corp. & Subs., supra,* and *Hospital Corp. of Am., supra,* we conclude that the CA software, as tangible property, falls within the definition of "qualified property" in § 77-4103(13).

The Department argues that the Tax Court's *Norwest Corp. & Subs.* decision departed from prior decisions finding software to be intangible property for investment tax credit purposes, specifically citing *Ronnen v. Commissioner,* 90 T.C. 74 (1988). *Ronnen,* however, is factually distinguishable from *Norwest Corp. & Subs. v. Commissioner,* 108 T.C. 358 (1997). In *Norwest Corp. & Subs.,* the Tax Court stated that "[i]ntangible intellectual property rights and the tangible or physical manifestations or embodiments of those rights are distinct property interests." 108 T.C. at 375. The software user in *Norwest Corp. & Subs.,* like First Data, acquired only property rights in the manifestation or embodiment of the software, not the underlying intellectual property. The *Norwest Corp. & Subs.* court distinguished *Ronnen* by pointing out that the *Ronnen* software user received the right to commercially exploit and market the software in a particular territory, rather than just a limited license— an acquisition of quasi-intellectual property rights not present in *Norwest Corp. & Subs.,* nor in First Data's situation.

Further, the investment tax credits considered in *Norwest Corp. & Subs., supra,* mirror the type of economic development the Legislature intended to encourage when it enacted L.B. 775. The *Norwest Corp. & Subs.* court stated that investment tax credits were enacted to encourage modernization and expansion

of the country's productive facilities, thereby improving the country's economic potential. Similarly, the Legislature stated that it enacted L.B. 775 "in order to encourage new businesses to relocate to Nebraska, retain existing businesses and aid in their expansion, promote the creation and retention of new jobs in Nebraska, and attract and retain investment capital in the State of Nebraska." § 77-4102(2). In reading a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Creighton St. Joseph Hosp. v. Tax Eq. & Rev. Comm.*, 260 Neb. 905, 620 N.W.2d 90 (2000). The statute above speaks plainly to the Legislature's intent—to promote economic investment and development in Nebraska.

Nebraska law requires that we construe tax credits and exemptions strictly. See, *Lackawanna Leather Co. v. Nebraska Dept. of Rev.*, 259 Neb. 100, 608 N.W.2d 177 (2000); *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue*, 248 Neb. 518, 537 N.W.2d 312 (1995). Since a statute conferring an exemption from taxation is strictly construed, one claiming an exemption from taxation of the claimant or the claimant's property must establish entitlement to that exemption. *Id.* We conclude that First Data has done so; the Tax Court's decisions and the Legislature's intent in enacting L.B. 775 support First Data's entitlement to a sales tax refund relating to the CA software.

We note that this decision and those of the Tax Court are consistent with decisions made under state tax law in several states, including Nebraska, which concluded that computer software constitutes tangible personal property subject to sales and use tax. See *A & D Tech. Supply Co. v. Nebraska Dept. of Revenue*, 259 Neb. 24, 607 N.W.2d 857 (2000). First Data and the Department stipulated that the CA software was delivered to First Data on magnetic tapes and that the software, once loaded onto First Data's mainframe computer, remains physically detectable there as ordered sequences of binary code. Similarly, in *South Cent. Bell Telephone v. Barthelemy*, 643 So. 2d 1240 (La. 1994), the Louisiana Supreme Court determined that software is not merely an intangible idea but a product given physical existence by being recorded in a physical form that has a

physical manifestation. "The software at issue is not merely knowledge, but rather is knowledge recorded in a physical form which has physical existence, takes up space on the tape, disc, or hard drive, makes physical things happen, and can be perceived by the senses." *Id.* at 1246. Thus, the Louisiana Supreme Court concluded that software constitutes tangible personal property subject to sales and use tax. See, also, *Wal-Mart Stores, Inc. v. City of Mobile*, 696 So. 2d 290 (Ala. 1996) (software is tangible property subject to local gross receipts tax); *Mark O. Haroldsen, Inc. v. Tax Com'n*, 805 P.2d 176 (Utah 1990) (although information on computer tapes could be transferred without using tangible medium, lease or purchase of information on tapes is subject to use tax as transfer of tangible personal property); *Pa. and W. Va. Supply Corp. v. Rose*, 179 W. Va. 317, 368 S.E.2d 101 (1988) (standardized computer disks are tangible personal property within meaning of state excise tax); *Hasbro Industries, Inc. v. Norberg*, 487 A.2d 124 (R.I. 1985) (computer software is tangible personal property subject to use tax); *Measurex Systems, Inc. v. State Tax Assessor*, 490 A.2d 1192 (Me. 1985) ("canned" software, prepared for variety of uses and suitable for use without modification, is subject to use tax as tangible personal property); *C&S Systems Inc. v. S. C. Tax Com.*, 280 S.C. 138, 311 S.E.2d 717 (1984) (computer software, delivered to purchaser in form that could be seen, felt, and touched, is tangible property subject to sales and use tax); *Chittenden Trust Co. v. King, Comm. of Taxes*, 143 Vt. 271, 465 A.2d 1100 (1983) (computer software tape constitutes tangible personal property for purposes of use tax). We note, however, that none of these state decisions relied on an interpretation of the Code in classifying software as tangible or intangible.

Because of our determination that the CA software constitutes tangible property under the definition provided in L.B. 775, we need not address whether the CA software constitutes a component of tangible property.

## CONCLUSION

We conclude that the district court erred in determining that the CA software did not constitute "qualified property" under § 77-4103(13). Therefore, we reverse the judgment of the district

court and remand the cause with directions that the district court enter a judgment that is consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.