REQUESTED BY: Anna J. Sullivan, Executive Director Nebraska Public Employees Retirement System
This is in response to your request for an "official" opinion of the Attorney General concerning the operative date for increased contribution rates for members of the judiciary established under the provisions of LB 1097, Laws 2004. LB 1097 was passed by the Legislature and approved by the Governor on April 15, 2004. Since the legislative act contained an emergency clause, it became effective on April 16, 2004. See Op. Att'y Gen. No. 03019 (July 9, 2003); Op. Att'y Gen. No. 87049 (April 15, 1987).
The specific question you ask is the date the new contribution rate of eight percent (8%) of compensation commences for judges who elect to make the increased contribution amounts under the provisions of LB 1097. Briefly summarized, the LB 1097 amendments to the Judges Retirement Act provide that a sitting judge may elect to pay the increased retirement contribution amounts, eight percent of monthly compensation, in return for certain enhanced benefits including surviving espousal benefits. Section 8 of LB 1097 in part states; "Such election shall be made by written notice delivered to the board not later than ninety days after the operative date of the section."
Section II of LB 1097 amended § 24-703(2)(b) of the Judges Retirement Act to state:
 Beginning on the operative date of this section, a judge who first serves as a judge on or after such date or a future member who elects to make contributions and receive benefits as provided in section 8 of this Act shall contribute monthly 8 percent of his or her monthly compensation to the fund until the maximum benefit as limited by subsection (2) of section 24-710 has been earned. After the maximum benefit as limited in subsection (2) of section 24-710 has been earned, such judge or future member shall contribute four percent of his or her monthly compensation to the fund for the remainder of his or her active service.
(Emphasis added).
 The language set forth in § II, "[beginning on the operative date. . .", is plain and unambiguous. The word "beginning" means starting or commencing. See Webster's New Universal Unabridged Dictionary,167 (2d Ed. 1983). The courts have concluded that when the language of a statute is plain and unambiguous, no further interpretation is needed. State v. Johnson, 259 Neb. 942, 613 N.W.2d 459
(2000). A statute is open for construction when the language used requires construction or may reasonably be considered ambiguous. State, ex rel. Stenberg v. Moore, 258 Neb. 199, 602 N.W.2d 465
(1999). However, if the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning. First Data Corp. v. State, 263 Neb. 344, 639 N.W.2d 898
(2002). Thus, the clear and unambiguous language of § II requires that the increased contribution rates of eight percent of compensation commence on the operative date of the section.
The operative date of § II providing for the increased contribution amounts is July 1, 2004. The Legislature, through express provision in the bill has indicated its intent that the increased contribution rates of eight percent of compensation shall commence on July 1, 2004 for sitting judges who elect to pay the increased contribution amounts. Section 40 of LB 1097 sets out the operative dates of sections of the bill and states:
 Sections 2, 3, 5 to 22, 24 to 28, 31 to 33, 35 to 37, 39 and 41 of this act become operative on July 1, 2004. Sections 1, 4, 30, 34, 38, and 42 of this act become operative three calendar months after the adjournment of the legislative session. The other sections of this act became operative on their effective date.
(Emphasis added).
The Legislature has expressed its intent that the amendments to the Judges Retirement Act become operative as soon as constitutionally permissible. Section 9 of LB 1097 states:
 Any changes to the Judges Retirement effecting retirement benefits shall be so interpreted as to effectuate their general purpose to provide, in the public interest, adequate retirement benefits as soon as the same may become operative under the Constitution of Nebraska.
We believe that the operative date of July 1, 2004 for commencing the increased contribution amounts and enhanced espousal benefits is constitutionally permissible. Article III, Section 19 of the Nebraska Constitution has been interpreted to prohibit any diminution or increase in salary or compensation of a public official during his or her term of office. Laughlin v. Johnson, 156 Neb. 671, 57 N.W.2d 531 (1953). And, the Nebraska Supreme Court has variously held that public employee retirement benefits constitute deferred compensation for services rendered. Halpin v. State Patrolmen's Retirement System, 211 Neb. 892, 320 N.W.2d 910
(1982); Gossman v. State Employees Retirement System, 177 Neb. 326,129 N.W.2d 97 (1964).
It is important to acknowledge that the increased contribution rates of 8 percent of compensation are voluntary since the participating members of the judiciary shall elect to pay the increased contribution amounts. Thus, the increased contribution amounts do not result in a reduction of salary that is offensive to the constitutional prohibition. In Wilson v. Marsh, 162 Neb. 237, 75 N.W.2d 723 (1956), the Nebraska Supreme Court concluded that mandatory contribution amounts made by judges to the retirement system during their existing term of office were a diminution of salary. In arriving at this conclusion, the Court reasoned:
 . . . where the state deducts from the salary an amount to create a pension or retirement fund without the direction or consent of the salaried officer the exaction is a deduction of that amount from the salary and a diminution of compensation to that extent.
Id. at 250, 75 N.W.2d at 731 (emphasis added).
It is apparent that the Court considered the mandatory nature of the contribution amounts to be a determining factor in concluding that the contribution amounts deducted from compensation diminish the salary of public officers during their term. In considering case authorities of other jurisdictions, the Court rated, "[t]he essence of that decision is that the deductions from the salary of the public officer were not voluntary and were not contributions by him; that he never received the amount withheld but it was and remained public money." Id. at 251,75 N.W.2d at 732.
It is our conclusion that the enhanced benefits for the members of the judiciary electing the coverage do not constitute an increase in the compensation of the judges. The additional benefits are tied to the 2% increase in contribution rates to be deducted from the participating judges' salaries under the provisions of § 7(1) of LB 1097. Accordingly, the increased benefits do not constitute an increase in the judges' compensation that is constitutionally offensive since the increased benefits are paid for through the increased contribution amounts consented to by the judges.
It is further constitutionally permissible that the provisions of a legislative enactment become operative after the effective date of the legislation. In Wilson v. Marsh, the Nebraska Supreme Court concluded that the legislature has the authority to provide that the operation of an act shall be postponed to a time beyond its effective date to a later time designated by a specific date or by the happening of an event that is certain to occur. Further, a law is not open to criticism that separate provisions of it take effect at different dates, if, as an entirety, it becomes of effect and operative on fixed dates. State ex rel. Wheeler v. Stuht, 52 Neb. 209, 71 N.W. 941 (1897).
We believe the language of §§ 8 and 40 of LB 1097 is clear and unambiguous with respect to the operative date for commencing the increased contributions for the members who elect to contribute the increased amounts. Accordingly, it is our opinion that the "new contribution rate of 8% of monthly compensation" commences on July 1, 2004 for judges making the election to pay the increased contribution amounts and receive the enhanced benefits.
Sincerely,
 JON BRUNING Attorney General
 Fredrick F. Neid Assistant Attorney General
APPROVED:
__________________________________ Attorney General